ORIENT INVESTMENT & FINANCE CO.,
Inc. v. COMMISSIONER OF IN-
TERNAL REVENUE.

ELLEN INVESTMENT & FINANCE CO.,
Inc. v. SAME.

Nos. 9551, 9552.

United States Court of Appeals
District of Columbia.

Argued Dec. 4, 1947.

Decided Feb. 2, 1948.

Mr. H. N. Roth, of Orlando, Fla., with whom Messrs. Joseph Hartman, of Jacksonville, Fla., and H. Nathaniel Blaustein, of Washington, D. C., were on the brief, for petitioners.

Miss Louise Foster, Special Assistant to the Attorney General, with whom Miss Helen R. Carloss and Mr. A. F. Prescott, Special Assistants to the Attorney General, were on the brief, for respondents.

Messrs. John P. Wenchel, Chief Counsel, and Charles E. Lowery, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for respondent.

Before GRONER, Chief Justice, and STEPHENS and WILBUR K. MILLER, Associate Justices.

GRONER, C. J.

These two cases involve the same question in precisely the same circumstances. We shall dispose of them as a single case. Petitioners filed ordinary income tax returns for the years 1940-41-42. Several years later, on an examination of petitioners' books, the Commissioner determined that both were liable for personal holding company surtaxes, and asserted penalties for failure to file personal holding company returns. Petitioners paid the tax and interest, but disputed the penalty. The Tax Court found petitioners were liable for the penalty and entered an order accordingly. The single question here is—Was this decision correct?

The Tax Court found that there was no dispute on the facts. Petitioners are corporations and have their principal offices at Orlando, Florida. They filed their income tax returns for the years involved with the Collector for the District of Florida, at Jacksonville. One of them, the Ori-

ent Investment & Finance Company, Inc., whom we shall call "Orient," operates two citrus groves and also owns some turpentine interests. The other, the Ellen Investment & Finance Company, Inc., carries on no business, and its only assets consist of bonds of the Angebilt Hotel Holding Company. At all times material here, the capital stock of Ellen has been owned by Orient, and its stock in turn has all been owned by I. N. Burman, his wife and daughter. Burman has served as president of both corporations during their entire existence. The books and accounts of both have always been kept by licensed public accountants, two of whom, J. B. Asher and Myer Sigal, were certified public accountants. D. A. Garrett succeeded Asher, and in turn was succeeded by Myer Sigal. Garrett and Asher are both deceased.

The Tax Court found that the accountants made all the entries in petitioners' books and prepared their income tax returns. In making them out they answered "No" to the question—"Is the corporation a personal holding company * * * ?" And accordingly did not prepare and file a personal holding company surtax return for either of petitioners for any of the years involved. So far as the evidence shows, they did not consider or discuss the matter of filing such returns. They never brought the matter to the attention of Burman, who had no knowledge of that requirement nor, in fact, of any of the other requirements of the tax laws. The Tax Court found that Burman is a man of little education, who would not understand the requirements of the tax statutes, and who therefore left those matters entirely in the hands of the experts whom he employed for that purpose. These accountants were reputable, licensed accountants, and Burman had complete confidence in them. He believed that they had filed all of the returns and had done all of the things required under the law. The accountants had before them at all times all of the records of both companies as to stock ownership, as well as the sources of income. No information concerning any of those matters was ever withheld from them by Burman, or any other officer or stockholder. The first time that

Burman had notice of the requirement for personal holding company returns was in 1945, when a revenue agent brought the matter to his attention. Another revenue agent, who had previously (1941) made an official examination of petitioners' books, had failed to make any mention of personal holding company returns, and obviously thought petitioners were not within that provision of the law.

Petitioners paid the additional tax and interest, as we have said, but refused to pay the penalty.

In this state of the record the Tax Court —one judge sitting—held, as appears to us, that because of the accountants' dereliction petitioners were liable for the penalty. Section 291 (a) of the Internal Revenue Code, as amended, 26 U.S.C.A. Int.Rev. Code, § 291(a), provides—"In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect * * *," the penalty shall be exacted. And the Commissioner's general interpretation of the exception in the statute is that if the delinquency occurs notwithstanding the exercise of ordinary care and caution, the penalty will not be charged. That is this case.

In applying the statute and the regulation it is well to bear in mind that the Tax Court definitely found that in the instances we are concerned with there was no willful neglect on the part of the petitioners or their officers. The Court was at pains to say:

"There is no cause whatever to question the good faith of this witness, nor, in view of his limited education, can we question his professed inability to understand the income tax laws. * * * We are convinced that there was no willful neglect here in the sense of 'an intentional or designed' failure to file on the part of petitioners or their officers."

In the light of this finding, obviously, the only question left is—whether the failure in the years in question was "due to reasonable cause." The Judge of the Tax Court

who heard the case was apparently of the opinion that because of the ownership of the stock of both petitioners by Burman and his wife and daughter, it was clear that both petitioners were "holding companies," and that since there was no explanation of the omission on the part of the public accountants (both of whom were then dead), the holding of "reasonable cause" could not be made. But we think, for many reasons, that goes too far, for stock ownership is not the only test of a personal holding company. There are other equally vital considerations, and that this is true is persuasively shown by the fact, to which we have already adverted, that Commissioner's own agent, on examining the books, accounts and records of petitioners in 1941, and in making his report, not only found no reason for personal holding company returns, but did find an overpayment of taxes, on the theory that petitioners were chargeable only on the ordinary income tax return by corporations. Certainly, there was nothing in this to put petitioners or petitioners' accountants on notice that a personal holding company return was required, but, on the contrary, they were lulled into believing that everything was in order. Accordingly, we have here a case in which neither the president of the two corporations nor his wife and daughter, who were the only other stockholders, had any knowledge or were capable of receiving any knowledge on the subject of the form of income tax returns to be filed, and consequently a case in which petitioners placed those matters in the hands of certified accountants whose expert knowledge was universally considered sufficient to fit them to do all that petitioners were required to do to comply with the tax laws. Clearly, there is nothing in this that should condemn petitioners. On the contrary, it was all they could do. They, as the Tax Court found, had turned over to the accountants all the records of the companies, both as to stock ownership and as to sources of income. Nothing was withheld. The accountants physically had the books and saw the entries, and petitioners relied in good faith on their action in preparing the returns correctly. Nevertheless, these uncontradicted facts are held not to constitute reasonable cause for not filing the proper returns. In short, that in a case like this, where the president and other officers and stockholders of the corporation are admittedly incompetent to understand, much less to prepare, proper returns, and the corporation selects as its agent a licensed, certified public accountant to do the job, the corporation's act in this respect does not measure up to the exercise of ordinary business care and prudence and the taxpayer becomes liable for *penalties* for its agent's omissions. But such a view of the language of the statute not only is contrary to natural justice, but also to many previous decisions of the Tax Court, and is in the very teeth of the language of the Supreme Court in the Spies case,[1] a criminal case, where, in construing among others this particular statute, the Court said 317 U.S. at page 496, 63 S.Ct. at page 367, 87 L.Ed. 418: "It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay." And this is as it should be.

■■ The question we have been discussing is not new, either in the Tax Court or in the appellate courts, and is elaborately dealt with in Hatfried, Inc., v. Commissioner, 3 Cir., 162 F.2d 628, 635, decided just six months ago. The latter case involves precisely the point involved in the present case in the respect in which we are concerned, on substantially the same factual basis. Judge Kalodner, in the Hatfried case, traces and analyzes the cases decided by the Tax Court pro and con, as well as some two or three cases decided in the Circuit Courts of Appeals. To repeat here this elaborate opinion and analysis would, we think, unduly prolong this opinion. Accordingly, we refer to the Hatfried case and the cases there examined as fully and amply supporting the conclusion we reach, —namely, that "The irrefragable conclusion from the record is that the taxpayer here, in fact and in law, exercised such

---

[1] Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

ordinary business care and prudence as to bring him within the rule that 'reasonable cause means nothing more than the exercise of ordinary business care and prudence.'" Southeastern Finance Co. v. Commissioner, 5 Cir., 153 F.2d 205; Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843. Here we are of opinion that the words "reasonable cause" were written by Congress into the statute by the amendment of 1936 to prevent and avoid just such hardships as are involved in this case. Prior to the amendment, the result here as determined by the Tax Court was inevitable, and the hardships thus resulting impelled Congress in right and fairness to provide by amendment for their discontinuance by excluding the penalty wherever reasonable cause for the omission to file is shown.

In the argument in this case there was a mild suggestion that whether the Tax Court's decision was right or wrong is not conclusive, for the reason that under the doctrine of the Dobson case,[2] the decisive point here involved a finding of fact as to which we are impotent to give relief. But this very clearly is not correct. Here, as we have seen, the facts are all admitted. But the decision turns not upon the facts, but upon the proper conclusion to be reached from the facts in the light of the law.

As the Third Circuit said in the Hatfried case, whether the elements which constitute reasonable cause are present is a question of fact, and as to that question of fact the Board found in favor of the taxpayer. But the real question is what elements must be present to constitute reasonable cause, and that is a question of law. "For example: whether the elements which constitute 'murder in the first degree' are present is a question of fact; what elements must be present to constitute 'murder in the first degree' is a question of law."

As we have indicated, we are of opinion that the decisions of the Tax Court were without substantial basis and must be reversed and the cases remanded for proceedings in accordance with this opinion.

Reversed and remanded.

---

[2] Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.