## DAVIS et ux. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4060.

United States Court of Appeals
Tenth Circuit.

Aug. 9, 1950.

Harold N. Rogers, Minneapolis, Minn. (P. J. Coffey, Minneapolis, Minn., on the brief), for petitioners.

L. W. Post, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and S. Dee Hanson, Special Assistants to the Attorney General, on the brief), for respondent.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This is a petition to review a judgment of the Tax Court sustaining the action of the Commissioner of Internal Revenue in assessing income tax deficiencies and 50 per centum fraud penalties for the years 1941 to 1944 inclusive. The petitioners, who filed joint income tax returns, have conceded the correctness of deficiencies and paid the same. The sole question for decision here is whether, considering the record as a whole, there is substantial evidence to sustain the fraud penalty which was assessed for each taxable year. Title 26 U.S.C.A. § 293(b) provides that if any part of a deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency shall be assessed. The Tax Court recognized that upon the issue of fraud, the burden was upon the Commissioner to prove the same by clear and convincing evidence. Title 26 U.S.C.A. § 1112; Mertens Law of Federal Income Taxation, Vol. 10, Sec. 55.19, page 30; Rogers v. Commissioner, 6 Cir., 111 F.2d 987; Duffin v. Lucas, 6 Cir., 55 F. 2d 786; Jemison v. Commissioner, 5 Cir., 45 F.2d 4; Griffiths v. Commissioner, 7 Cir., 50 F.2d 782.

The material facts are not in dispute. The petitioners were husband and wife, and will hereinafter be referred to as taxpayers or individually as the taxpayer and the taxpayer's wife. They resided at Casper, Wyoming, where they were engaged in the ranching business and in addition the taxpayer's wife owned and operated an orange grove in California. The source of their property was an inheritance to the taxpayer's wife in 1915. They were not highly educated people but of good sound business judgment. Neither of the taxpayers was familiar with the tax laws and regulations nor did they know how to prepare an income tax return. They had never attempted to prepare a return and since 1921 C. H. Reimerth, a reputable certified public accountant, had been employed to prepare their returns and they relied entirely upon him to correctly prepare the same and to compute the correct tax. They furnished him with all their books and records and when the returns were completed they accepted them without question. It is conceded that the taxpayers, with unimportant exceptions, furnished to the accountant full information and data as to their business and income from which a correct return could be prepared. In fact the Commissioner, in computing the deficiencies, used substantially the same data as that furnished the accountant. The reported net income and the understatement of the same for the years in question are as follows:

| Year | Reported | Understatement |
|------|----------|----------------|
| 1941 | $1,396.64 | $18,323.17 |
| 1942 | (944.49) | 14,122.28 |
| 1943 | 1,667.25 | 12,789.13 |
| 1944 | 1,788.64 | 27,779.32 |

The understatements generally were the result of omitted income and unallowable deductions. During these years the taxpayers handled large sums of money, lived in a rather pretentious home in the City of Casper, part of the time their two children were attending college, and at different times the members of the family owned and operated three automobiles. During the years 1937 to 1940 inclusive, the accountant on behalf of the taxpayers made depreciation deductions which were disallowed. Upon advice of the accountant the tax was paid under protest but no action was taken to recover the amount paid. The accountant contended that the depreciation deductions were correct and continued them in the returns in question. The Tax Court relied upon these facts to sustain the charge of fraud. The Commissioner here argues in effect that the reported income shown by the returns was so small as compared with the actual income and certain deductions were so flagrant that the taxpayers must have known that their returns were understated and because of this knowledge there was an intent on their part to evade taxes. With this we cannot agree. The ranches of the taxpayers were operated by borrowing large sums of money. When sales were made the proceeds went to the bank and credit was usually given on existing notes. Much of their enlarged net worth for the years in question was due to increased livestock inventories. In preparing the returns, intricate and complicated questions of allowable depreciation arose as to the ranch and orange grove operations of which the taxpayers had no knowledge and of necessity relied upon expert advice and we believe they had a right to do so. The Tax Court took the position that the taxpayers "cannot shift the personal responsibility of making a correct tax return to others. That responsibility must be borne by the petitioners themselves. The returns were theirs." Of course the responsibility of filing a correct return is that of the taxpayer but a failure to file a correct return does not necessarily constitute fraud. Fraud implies bad faith, intentional wrong doing and a sinister motive.[1] It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion.[2] We think the Second Circuit used language appropriate to this case in

---

1. 37 C.J.S., Fraud, § 2, P. 210; Vol. 17, Words and Phrases, Perm.Ed., Fraud, p. 522.

2. Hatfried, Inc. v. Commissioner, 3 Cir., 162 F.2d 628, 633; Griffiths v. Commissioner, supra; Jemison v. Commissioner, supra.

discussing the right of a taxpayer to rely on expert advice in Haywood Lumber & Min. Co. v. Commissioner, 178 F.2d 769, at page 771, when it said:

"When a corporate taxpayer selects a competent tax expert, supplies him with all necessary information, and requests him to prepare proper tax returns, we think the taxpayer has done all that ordinary business care and prudence can reasonably demand. * * * We doubt if anyone would suggest that a client who stated the facts of his case to his lawyer must, in order to show ordinary business care and prudence, inquire specifically about the applicability of various legal principles which may be relevant to the facts stated. The courts have recognized that reliance on the advice of counsel or of expert accountants, sought and received in good faith is 'reasonable cause' for failing to file a tax return. We think those cases are correctly decided and in principle control the case at bar. The Tax Court relies on Hermax Co. v. Commissioner, 3 Cir., 175 F.2d 776, affirming 11 T.C. 442. There the accountant was not qualified to advise about tax matters and the corporation's president testified to no reason why he relied on him. Here the undisputed evidence showed that Wolcott had had over twenty years of extensive tax experience with a prominent accounting firm in Binghamton and had advised the petitioner on tax matters in previous years.

"The respondent contends that where all responsibility for the preparation of tax returns is delegated to an agent, the taxpayer should be held to accept its agent's efforts *cum onere* and be chargeable with his negligence. That was the rationale suggested by this court in Berlin v. Commissioner [2 Cir.], 59 F.2d 996, certiorari denied 287 U.S. 642, 53 S.Ct. 90, 77 L.Ed. 555. Further reflection convinces us that that proposition is not sound. The standard of care imposed by section 291 is personal to the taxpayer. To impute to the taxpayer the mistakes of his consultant would be to penalize him for consulting an expert; for if he must take the benefit of his counsel's or accountant's advice *cum onere,* then he must be held to a standard of care which is not his own and one which, in most cases, would be far higher than that exacted of a layman."

■ In Orient Investment & Finance Co. v. Commissioner, 83 U.S.App.D.C. 74, 166 F.2d 601, 3 A.L.R.2d 612, the taxpayer had turned over to accountants all the records of the company, as in this case nothing was withheld. The accountants physically had the books and saw the entries. The taxpayers relied upon their action in preparing the returns correctly. Under such circumstances the court said that to hold the taxpayer liable for penalties would not only be "contrary to natural justice, but also to many previous decisions of the Tax Court." That court recognized the principle that "it is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care." Spies v. U. S., 317 U.S. 492, 496, 63 S.Ct. 364, 87 L.Ed. 418. It is a matter of common knowledge that very few people are familiar with the income tax laws and regulations. Most of them resort to expert advice in the preparation of their returns. The collectors throughout the country have made available numerous trained agents to assist taxpayers in preparing their returns. To hold a taxpayer guilty of fraud, who without actual knowledge that a return is false, and after a full disclosure to the expert preparing the same, would be untenable.

■ We are of the opinion there is no substantial basis for the finding of fraud by the Tax Court, and the case is remanded to redetermine the tax in accordance with the views herein expressed.