**SPOUTING ROCK BEACH CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2154.**

United States District Court
D. Rhode Island.
Aug. 25, 1959.

Cornelius C. Moore, Newport, R. I., Salvatore L. Virgadamo, Francis J. Boyle, Newport, R. I., of counsel, for plaintiff.

Robert T. Mulcahey, Dept. of Justice, Washington, D. C., Joseph Mainelli, U. S. Atty., Arnold Williamson, Jr., Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

This is an action for the recovery of penalties and interest thereon alleged to have been erroneously and illegally assessed and collected because of the delinquent filing of tax returns for membership dues and subscription fees for the years 1947 through 1951.

During the years involved, the plaintiff maintained and operated, and now maintains and operates, a beach club providing certain facilities exclusively for the benefit of its members and their guests. The plaintiff, which is also known as Spouting Rock Beach Association, is a corporation created by special act of the General Assembly of the State of Rhode Island on February 5, 1897 for the purpose of:

" * * * buying, selling, leasing, holding and improving real and personal property, bathing privileges and other rights and of undertaking such measures as may promote the welfare of the City of Newport as a resort for summer residents and owners of cottages, and for the transaction of any business connected therewith and incidental thereto."

Plaintiff had and now has the same two classes of membership, stockholders and subscribers. Stockholders must be duly elected and must purchase five shares of stock as a condition precedent to participation as stockholding members. Subscribers, unlike stockholders, must be elected annually and are not entitled to vote or attend meetings of the corporation, nor otherwise to have a voice in its management. Stockholders pay annual dues and subscribers pay a seasonal fee, the proceeds of which are used to sustain the activities of the plaintiff. All members are allowed to bring guests to the beach premises a certain number of times during the summer season, but a charge is made for the admission of each guest.

At least seventy-five per cent of the stockholders and ninety per cent of the subscribers, during the years herein involved, were non-residents of the City of Newport. During the winter months they traveled a great deal and lived in different parts of this country and abroad, many of them spending long periods of time in foreign lands.

The plaintiff had officers who were elected by the stockholders, and a "Governing Committee", so-called, which functioned in much the same manner as a conventional Board of Directors of a corporation.

Prior to July, 1947 the plaintiff regularly collected from its members and remitted to the Government the excise taxes imposed by section 1710(a) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 1710(a), upon amounts paid as dues, membership or initiation fees to any social, athletic or sporting club or organization. During said period, the plaintiff also filed corporate income tax returns and paid the income taxes due and payable on its net income. For the years 1943 to 1946, inclusive, these taxes amounted to $8,-934.39. The evidence further shows that the books and records of the plaintiff for the year 1945 were audited by a representative of the Internal Revenue Service after the filing of its income tax return for that year.

At an annual meeting of the stockholders of the plaintiff in 1947, a stockholder raised the question of whether the payment of corporate income taxes and excise taxes did not result in double taxation. This stockholder contended that the plaintiff was being treated as a business corporation for income tax purposes and also as a social organization for excise tax purposes. As a result of this complaint, the Governing Committee was directed to appoint a special committee to study the problem and to determine whether the plaintiff and its members were being correctly taxed. The Governing Committee proceeded to select said special committee. The committee so selected comprised four attorneys, one of whom was the then general counsel for the plaintiff, Cornelius C. Moore, Esquire, a member of the Rhode Island bar who had then been engaged actively in the general practice of law for more than thirty years and who had had a wide experience in probate and estate matters and tax problems incidental thereto. The remaining members of this committee, all members of the plaintiff corporation, were reputable and experienced practitioners, and at least one of them had specialized in tax work. The task of legal research on the problem was assigned to Mr. Moore in his capacity as legal counsel for the plaintiff. After intensive study by him and by other attorneys in his office, he concluded that the plaintiff was a business corporation and not a social, athletic or sporting club or organization within the meaning of section 1710 of the Internal Revenue Code of 1939, as amended, and that the dues or membership fees paid to the plaintiff were not subject to the tax imposed thereunder. Mr. Moore advised the committee to that effect, recommending that appropriate action be taken to secure a recovery of all taxes which had previously been paid (insofar as recovery thereof was not then barred by the statute of limitations). He also recom-

mended that no further excise taxes be *paid* to the Government until the question of the propriety of the collection and payment of such taxes had been authoritatively determined in appropriate legal proceedings. In reporting his conclusions and recommendations to said committee, he pointed out that the Supreme Court of Rhode Island in the case of Spouting Rock Beach Ass'n v. Tax Commissioners of State of Rhode Island, 1917, 40 R.I. 499, 101 A. 215, had held that the plaintiff was a corporation "carrying on business for profit", and was liable for the corporate excess tax imposed by the statutes of Rhode Island upon every corporation carrying on business for profit in that state.

The committee then reviewed Mr. Moore's conclusions and recommendations, approved them in full, and reported them to the Governing Committee as their conclusions and recommendations. Relying on this advice, the Governing Committee voted that Mr. Moore be authorized to file claims for the refund of said taxes and that the members of the plaintiff be requested to execute the requisite powers of attorney authorizing the plaintiff to file said claims in their behalf. A letter, accompanied by an appropriate power of attorney to be executed by each member, was then sent to the membership.

After the receipt of executed powers of attorney from most of the members, the plaintiff in 1948 filed claims with the Commissioner of Internal Revenue seeking refunds of the taxes it had collected and paid on dues and membership fees for the period from February, 1944 through May, 1947, and of the taxes it had collected and paid on initiation fees for the period from July, 1944 through May, 1948. Relying upon the advice of Mr. Moore and of the said committee, no further returns of excise taxes on dues and membership fees were filed, nor were taxes on the same paid by the plaintiff until February, 1952. During this period, however, the plaintiff did collect from its members sums equivalent to the amount of taxes which would be due

(on dues and membership fees) in the event the plaintiff's contention and belief should not be sustained. The sums so collected were placed in a special account and credited to the persons who had paid them, pending the determination of said claims for refund. It further appears that during this same period the plaintiff by its Assistant Treasurer continued to file returns and remit the taxes imposed by said section 1710 on its so-called initiation fees, i. e., the amount required to purchase stock in order to qualify as a stockholding member. It should be noted at this juncture that excise taxes on initiation fees were not of major concern, as only six such fees were collected and remitted during the entire period from 1947 through 1951.

Subsequent to the filing of the claims for refund, Mr. Moore had several conferences with the Deputy Commissioner of Internal Revenue in his efforts to have said claims allowed. During these conferences the latter conceded that it was unusual that the plaintiff should be subject to corporate income taxes and also required to collect and remit excise taxes on the dues, membership and initiation fees paid by its members, thus being regarded both as a business corporation and as a social, athletic or sporting club or organization within the provisions of said Internal Revenue Code. He also admitted that he had no judicial precedent for the determination of the plaintiff's claims for refund. Finally, on October 6, 1950, the plaintiff was notified that its claims had been denied.

Consideration was then given by the plaintiff's officers, Governing Committee and counsel to the advisability of conducting further legal proceedings in an effort to secure said refunds; but it was eventually decided that the plaintiff would take no further action in this regard. However, this decision was not reached until the Deputy Commissioner advised the plaintiff that it would not be required in the future to file any income tax returns or to pay any income tax on its net income. Thereafter, on Febru-

ary 29, 1952, the plaintiff filed proper returns and paid the excise taxes due and owing, together with interest thereon, for the years 1947 to 1951 in accordance with the ruling of the Commissioner. Subsequently the Commissioner, purporting to act under section 3612(d)(1) of said Internal Revenue Code of 1939, 26 U.S.C.A. § 3612(d)(1), assessed late filing penalties on these returns against the plaintiff. These penalties, together with interest thereon, amounted to $6,338.72. This amount was paid in full by the plaintiff and on June 7, 1955, it filed claims for the refund thereof. These claims were rejected in their entirety on November 29, 1955 on the ground that plaintiff had not shown that its failure to make and file said returns when required was due to reasonable cause. The instant action followed.

The plaintiff's right to the relief it seeks is governed by the provisions of section 3612(d)(1) of the Internal Revenue Code of 1939 which provide in material part as follows:

> "*Failure to file return.* In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, *except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to wilful neglect, no such addition shall be made to the tax * * *"* (Emphasis added.)

■ The issue presented is thus a narrow one—was the plaintiff's failure to file said returns when required "due to a reasonable cause"? Clearly the burden of proof rests upon the plaintiff to establish by a fair preponderance of the credible evidence that its failure was due to a reasonable cause. Sanders v. Commissioner, 10 Cir., 1955, 225 F.2d 629, certiorari denied 1956, 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839; Burford Oil Co. v. Commissioner, 5 Cir.,

1946, 153 F.2d 745; Paymer v. Commissioner, 2 Cir., 1945, 150 F.2d 334.

■ Plaintiff contends that reasonable cause for its failure to file said returns on time existed because it relied on the advice of its counsel and of the special committee of which he was a member, and all of whose members were reputable attorneys. My consideration of this contention must begin with an acknowledgement of the now accepted rule, which is well set forth in 10 Mertens, Law of Federal Income Taxation (Zimet Revision 1958), § 55.27:

> "It may be stated generally that a taxpayer who acts upon the advice of reputable counsel is not to be considered guilty of either fraud, or negligence, or delinquency. It has been indicated that the taxpayer's interpretation of a transaction may be viewed in the light of what was reasonable at the time the transaction occurred. The fact that the taxpayer seeks and obtains advice from counsel tends to show that he is acting in good faith and that he avails himself of the best means at his command to determine his liability honestly and fairly." (Footnotes omitted.)

The burden of showing the qualifications of the counsel selected, as well as a good faith reliance on his or their advice, rests upon the taxpayer. Clark v. Commissioner, 3 Cir., 1958, 253 F.2d 745; Rene R. Bouche, 1952, 18 T.C. 144.

In the present case, before taking any action, the Governing Committee appointed a committee of experienced and reputable attorneys, including plaintiff's regular counsel, to consider and recommend a course of action to be followed by the plaintiff with respect to the taxes involved. The plaintiff's records and other relevant information were made wholly available to said committee. This committee, while entrusting the task of research and study to plaintiff's general counsel, considered and approved the latter's conclusions and recommendations.

The competency of the latter to render advice in regard to tax matters, having in mind his extensive experience, cannot be successfully questioned. In my judgment the procedure followed by the Governing Committee was prudent and reasonable, and clearly establishes its good faith in the premises.

The question which the committee was called upon to decide was unusual and clearly one of first impression. Excise taxes of the type being assessed against the plaintiff under said section 1710 applied only to fees paid to a "social, athletic, or sporting club or organization". And in 1917, the Supreme Court of Rhode Island had held that the plaintiff, insofar as that state's corporate excess tax law was concerned, was a corporation "carrying on business for profit" and not a social club. See Spouting Rock Beach Ass'n v. Tax Commissioners of State of Rhode Island, supra. It was the opinion of Mr. Moore, concurred in by said committee, that this decision determined the plaintiff's status for federal tax purposes, and that excise taxes were not properly assessable to the plaintiff since said section 1710 did not apply to business corporations.

■■ While the mere fact that the tax liability of a taxpayer is in substantial doubt does not of itself excuse noncompliance, see Beck Chemical Equipment Corp., 1957, 27 T.C. 840, it is nevertheless the general rule that where such doubt exists and a legal opinion with respect thereto is obtained from competent and reputable counsel, reliance in good faith on such opinion constitutes reasonable cause sufficient to defeat the imposition of delinquency penalties. Hatfried, Inc. v. Commissioner, 3 Cir., 1947, 162 F.2d 628; Safety Tube Corp., 1947, 8 T.C. 757, affirmed 6 Cir., 1948, 168 F.2d 787; The C. R. Lindback Foundation, 1945, 4 T.C. 652, affirmed per curiam 3 Cir., 1945, 150 F.2d 986; Walnut Street Co. v. Glenn, D.C.Ky.1948, 83 F.Supp. 945. Here it has been convincingly established that the plaintiff sought and procured the advice of eminently qualified lawyers, and acted strictly in accordance with the advice so obtained. Having taken such prudent steps to inform itself as to its tax liability in the premises, it would seem harsh and unrealistic to place upon the plaintiff the additional burden—as the Government suggests—of consulting also with its accountants, who, insofar as the evidence shows, merely prepared its tax returns, but who had never advised it previously on tax matters. The law requires only that a taxpayer show reliance in good faith upon the advice of a practicing lawyer. Mayflower Investment Co. v. Commissioner, 5 Cir., 1956, 239 F.2d 624; Orient Investment & Finance Co. v. Commissioner, 1948, 83 U.S.App.D.C. 74, 166 F.2d 601, 3 A.L.R.2d 612; Dayton Bronze Bearing Co. v. Gilligan, 6 Cir., 1922, 281 F. 709; The C. R. Lindback Foundation, supra. Here the plaintiff sought and received the opinion of several attorneys; it was not under any duty to seek verification of their opinion by its accountants.

■ Moreover, having in mind the circumstances existing when the question of the plaintiff's liability for said excise taxes was first raised, it cannot be denied that there was substantial doubt as to the existence of that liability, or that plaintiff's counsel and the said committee had reasonable grounds for advising the plaintiff as they did. The fact that the Commissioner ultimately ruled to the contrary is not conclusive on the issue of the existence of reasonable cause. Brooklyn & Richmond Ferry Co., 1947, 9 T.C. 865, affirmed 2 Cir., 1948, 171 F.2d 616, certiorari denied 1949, 336 U.S. 968, 69 S.Ct. 940, 93 L.Ed. 1119; Safety Tube Corp., supra; Gemological Institute of America, Inc. v. Riddell, D.C.Cal.1957, 149 F.Supp. 128.

The Government also questions whether the plaintiff acted in good faith in relying upon the advice of its counsel. In support thereof, primary emphasis is placed upon two courses of action taken by the plaintiff. First, the Government points to the plaintiff's conduct in continuing to collect from its members, during the years 1947–1951, inclusive,

sums equal to the excise taxes which would be due and payable in the event the Commissioner should reject the claims for refund to be filed by the plaintiff (and which were in fact filed in 1948) and in the event the latter's ruling ultimately prevailed. In my considered judgment no such inference of lack of good faith on the part of the plaintiff should be drawn from the collection of those sums. The evidence makes it abundantly clear that plaintiff's conduct in this respect was based upon the advice of its counsel and the members of said committee, and that its conduct was reasonable and prudent under the circumstances, having in mind that most of plaintiff's members and subscribers were nonresidents of Newport and that its subscribers were elected on a year to year basis. It is obvious that said course of action was taken to avoid the great practical difficulties which would be most certain to arise later if it became necessary to assess and collect these amounts retroactively in the event that plaintiff's claims for refund were denied. Moreover, it must be borne in mind that these excise taxes were imposed by law upon the members of the plaintiff and not upon the plaintiff itself. Under the circumstances, the collection of said sums and their accumulation in a reserve fund was neither a recognition of the validity of said taxes nor an admission of the plaintiff's liability to collect and remit them, but simply a prudent and reasonable business procedure.

Secondly, the Government seeks to have me draw the inference that the plaintiff did not act in good faith from the fact that excise taxes were collected and paid by the plaintiff on initiation fees, so-called, during the period when excise taxes on membership dues and fees were not paid. The Government's contention is predicated upon the following syllogism: excise taxes on said initiation fees were imposed by section 1710(a) (2) of the Internal Revenue Code of 1939, as amended; excise taxes on membership dues and fees were imposed by section 1710(a) (1) of said Code; these provisions apply to the same classes of organizations; and therefore the plaintiff's decision to remit the taxes due and payable upon initiation fees and not to file excise tax returns pertaining to membership dues and subscription fees shows that the plaintiff did not rely on the advice of Mr. Moore, or relied on inconsistent advice, or inconsistently followed the advice given to it.

The credible testimony on this point does not warrant any such conclusion. The Assistant Treasurer of the plaintiff testified that the taxes on said initiation fees were collected and remitted during the period as a matter of course in accordance with pre-existing office routine; and that she had never been advised or directed by her superiors to discontinue the practice. From the documentary and other evidence presented it is clear that the propriety of the collection and remittance of said initiation fees was for some unexplained reason never considered and was never the subject matter of any legal advice to the plaintiff or its Governing Committee. Having in mind that there were only six new stockholding members admitted during the period from 1947 to 1951, I am convinced that the collection and remittance by the Assistant Treasurer of the excise taxes paid by them on their purchases of stock was the result of routine office practice, was not the result of reliance upon any inconsistent legal advice or failure to follow legal advice, and should not be deemed to be indicative of any want of good faith on the part of the plaintiff.

Finally, the Government contends that even if reasonable cause for failure to file said excise returns existed at the times when they should have been filed, such cause was vitiated by the delay in filing them following receipt of the notice of the disallowance of the plaintiff's claims for refunds with respect to the years 1944 to 1947, inclusive. This notice of disallowance was forwarded to the plaintiff on October 6, 1950; the returns involved in this proceeding were not filed until February 29, 1952, when

the excise taxes shown therein to be due and payable were paid in full, together with interest thereon. The Government contends that this delay in filing of almost fifteen months after receipt of said notice was totally without justification and constitutes wilful neglect sufficient to warrant the imposition of the penalties by the Commissioner. In this connection it is clear that the burden is upon the plaintiff to show not only that reasonable cause for its failure to file the returns when due existed on said dates, but also that such cause continued to exist up to the actual date of filing. Cf. Plunkett v. Commissioner, 1 Cir., 1941, 118 F.2d 644.

It is undisputed that in 1950, under the applicable statute of limitations contained in section 3772(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3772(a) (2), the plaintiff had two years from and after the mailing of said notice of disallowance of its claim by the Commissioner in which to file an action for the recovery of said taxes.

The evidence establishes that after its receipt the notice of disallowance was referred to Mr. Moore for his advice as to what steps, if any, should be thereafter taken by the plaintiff; and that after study thereof he advised its Governing Committee that in his opinion the Commissioner's ruling was erroneous and subject to reversal in appropriate judicial proceedings. Before any final decision was reached by the Governing Committee as to the advisability of instituting legal proceedings to avoid the ruling of the Commissioner, Mr. Moore had at least one further conference with the Deputy Commissioner regarding the plaintiff's status. As a result thereof the Commissioner ruled late in 1951 that the plaintiff would no longer be required to file federal income tax returns or to pay an income tax on its net income, if any. As a consequence of this ruling, the situation which gave rise to the action of the plaintiff in seeking legal advice in 1947 concerning its liability to collect and remit said excise taxes, and to the course of action which plaintiff pursued

thereafter, relying on said legal advice, ceased to exist. Thereupon plaintiff, again relying upon the advice of its counsel, decided not to commence any action to effect a refund of said excise taxes for the years 1944 to 1947, inclusive, and to file the returns for the years 1947 to 1951, inclusive. These were filed shortly thereafter, and the excise taxes shown to be due were paid in full, together with interest thereon.

In determining whether plaintiff's failure to file said returns until February 29, 1952 was due to reasonable cause, as it contends, or to wilful neglect, as contended by the Government, it must be borne in mind that the Commissioner's denial of plaintiff's claims for refund was not a final determination. His ruling was subject to judicial review in an appropriate action to recover the taxes, the claims for the refund of which he had denied. Plaintiff had the unqualified right to institute such an action within two years after October 6, 1950. In my opinion, the filing of said returns for the years 1947 to 1951, inclusive, before plaintiff had decided to forego the institution of such an action, could reasonably and in good faith have been regarded by the plaintiff as capable of being construed as an admission by the plaintiff of the invalidity of its claims and prejudicial to its possible right to the recovery of said taxes. Having in mind the circumstances as they then existed, it cannot be said that plaintiff's failure to file said returns while the institution of said action was under consideration amounted in and of itself to wilful neglect within the meaning and spirit of section 3612(d) (1) of said Code.

Considering all of the testimony and the reasonable inferences to be drawn therefrom, I am satisfied that the plaintiff's failure to file said returns prior to February 29, 1952 was wholly due to its reliance on competent legal advice; that said advice had a substantial foundation in logic and legal precedent; that the plaintiff relied thereon in

946

good faith; and that under the unusual circumstances existing in this case the plaintiff's failure to file said returns when required, and before February 29, 1952, was due to reasonable cause and not to wilful neglect. My examination of the authorities convinces me that the policy of the remedial exception provided in said section 3612(d) (1) requires a finding by me that said penalties were improperly imposed upon the plaintiff.

Plaintiff is entitled to recover said sum of $6,338.72, together with interest thereon. Within twenty days from the date hereof, the parties shall present to me a computation of the amount to which the plaintiff is entitled and thereupon judgment shall be entered in its favor in said amount.