IRA BLUMBERG AND ELISA BLUMBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blumberg v. Commissioner
Docket No. 5823-90
United States Tax Court
T.C. Memo 1992-545; 1992 Tax Ct. Memo LEXIS 565; 64 T.C.M. (CCH) 746; September 15, 1992, Filed *565 Decision will be entered for respondent. For Petitioners: Sanford Amdur.
For Respondent: William T. Lyons. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined a $ 10,822.78 deficiency in Ira and Elisa Blumberg's (petitioners) Federal income tax for taxable year 1983. Respondent also determined that petitioners were liable for additions to tax under section 6651(a)(1)[1] in the amount of $ 883.95, under section 6653(a)(1) in the amount of $ 669.63 plus 50 percent of the interest due on the entire deficiency under section 6653(a)(2), and under section 6661(a) in the amount of $ 2,705.69. In the amendment to answer respondent asserted an increased income tax deficiency of $ 20,528.10 and increased additions under section 6651(a)(1) in *566 the amount of $ 3,104.83, under section 6653(a)(1) in the amount of $ 1,026.41, plus 50 percent of the interest due on $ 20,528.10 under section 6653(a)(2), and under section 6661(a) in the amount of $ 5,132.03. The issues presented for our consideration are: (1) Whether for taxable year 1983, petitioners understated their income in the additional amount asserted in respondent's amendment to answer; [2] (2) whether petitioners are liable for an increase in additions to tax under sections 6653(a)(1) and (2), 6651(a)(1), and 6661; and (3) whether petitioner Elisa Blumberg is entitled to relief as an innocent spouse. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of filing the petition herein, petitioners were married and resided in South Salem, New York. Petitioners' Federal *567 income tax return for taxable year 1983 was due April 15, 1984, and respondent granted timely requests for extensions for filing until October 15, 1984. Petitioners' 1983 jointly filed Federal income tax return bears a signature date of December 26, 1984, and was stamped received by respondent's service center on December 31, 1984. During 1983 and 1984 petitioner Ira Blumberg was employed by Longfellow Industries Inc. (Longfellow) as its controller. On their 1983 joint Federal income tax return petitioners reported $ 48,200 in wages which petitioner husband received from Longfellow. Petitioner husband was an accountant for 10 years prior to his employment with Longfellow and he retained some of those clients during the term of his employment with Longfellow. Elisa Blumberg was not involved in her husband's accounting practice or business activities. Ira Blumberg's employer discovered that he had been embezzling company funds. On September 25, 1985, petitioners filed a New York State amended resident income tax return on which they reported $ 68,800 [3] as additional miscellaneous income and/or compensation received by Ira Blumberg from his employer. On July 13, 1988, pursuant *568 to charges brought by the Manhattan District Attorney's Office, Ira Blumberg was convicted of the crime of offering a false instrument for filing in New York State. [4] This conviction was directly attributable to the additional income which he had embezzled from Longfellow during tax year 1983. In 1989 petitioners agreed to a further increase of $ 52,499 in unreported income to New York State. Petitioner wife received a bachelor of arts degree in music and education from Queens College in 1976. While in college petitioner wife did not take courses in accounting, business, or finance nor does she have any *569 experience or training in these subjects. She has been a professional songwriter for 20 years and a music producer for approximately 4 years. Following the birth of their son in November 1983, petitioner wife remained at home and conducted her business from a workroom in the family residence. On Schedule C of their 1983 Federal income tax return petitioners reported gross receipts from petitioner wife's music production business, Lisa Ratner Music Production, in the amount of $ 5,034. On their 1983 Federal income tax return petitioners reported interest income of $ 2,239. For taxable year 1984, petitioner wife filed her New York State resident income tax return as married filing separately. On her New York State resident return for 1984 petitioner wife reported "Interest income" as related to her songwriting activities of $ 8,339. In connection with her New York State resident return for 1984, petitioner wife also claimed a depreciation deduction for recording equipment placed in service in 1984 with a depreciable basis of $ 11,211. Petitioners maintained joint bank accounts at Fidelity Cash Reserves (Fidelity) and Manufacturers Hanover Trust (Manufacturers). In tax year *570 1983 deposits totaling $ 104,688.54 and $ 113,790.28 were made into the Fidelity and Manufacturers accounts, respectively. The monthly bank statements for these accounts bear both petitioners' names and were addressed to the marital residence. Petitioners also maintained a joint checking account at National Westminster Bank. Petitioner wife utilized this account to pay for general household expenses, such as groceries, telephone, babysitters, and clothes. Petitioner husband paid the mortgage, utility bills, and car payments, and was generally responsible for handling the family finances. Although petitioners reported $ 48,200 in wages from Longfellow on their joint Federal return, petitioner wife was told by her husband that his salary at Longfellow was about $ 70,000. Petitioner wife was aware that the family's household budget was approximately $ 2,000 a month. Ira Blumberg began using cocaine sometime in July 1984. Petitioner husband concealed his drug usage from his wife. It was not until September 1984, when she found her husband in a seizure-like state from a drug overdose, that Elisa Blumberg became aware that her husband was using drugs. Prior to that time petitioner *571 wife believed the changes in her husband's appearance and behavior were attributable to his father's recent death and the emotional distress caused by a family dispute over his father's will. After the overdose petitioner wife, along with the couple's infant son, moved out of the family home for approximately 1 month. Petitioner wife agreed to return home based on her husband's assurances that he was no longer using drugs and would seek counseling for his problems. Petitioners began seeking an out-patient treatment program for petitioner husband and in late January 1985 petitioners began counseling at Liberation Clinic with Dr. Bette Kolodney. Although the incident in September 1984 alerted Elisa Blumberg to the drug problem, it was not until March 1985, in the course of their therapy with Dr. Kolodney, that she became aware of the degree of her husband's substance abuse and the costs of his drug abuse. Sometime in 1980 or 1981, petitioners purchased a home on West Mountain Road in South Salem, New York, for approximately $ 120,000. Petitioners sold this property in August 1984, realizing a gross profit of approximately $ 60,000. By an agreement dated April 25, 1984, petitioners *572 contracted to purchase a parcel of land in Pound Ridge, New York. The purchase price was $ 100,000, $ 10,000 payable upon signing the contract and $ 90,000 upon delivery of the deed. The agreement was notarized on May 22, 1984, and the contract of sale was recorded by the Westchester County Clerk's Office on June 13, 1984. Petitioners contracted with Mr. Robert Rubin to construct a home on the Pound Ridge property. The original contract price was $ 250,000; however, the ultimate cost of the construction was somewhat higher. Sometime in the late summer of 1984, petitioners rented a home in Stamford, Connecticut, in which they lived for 1 year while they were involved in the building of a house on the Pound Ridge property. Petitioners obtained $ 100,000 of financing from the Dime Savings Bank of New York on December 21, 1984. Petitioner wife was aware of all facets of the house construction, including the costs. OPINION 1. Understatement of Income
On brief, petitioners contend respondent has failed to prove that the additional $ 52,499 in income agreed to with New York State and determined by respondent in the statutory notice of deficiency was not previously included *573 in the $ 68,800 reported by petitioners on their New York State amended tax return. Petitioners argue that, if anything, respondent's determination of additional gross income should have been the $ 68,800 reflected in the amended return, or a total increase of $ 16,301 from the statutory notice of deficiency. Respondent contends that the stipulation of facts and attached exhibits are sufficient to carry her burden of proof. [5]
Paragraph 6 of the parties' stipulation reads as follows: In his capacity as controller, during taxable year 1983 petitioner Ira Blumberg received additional miscellaneous income and/or compensation from his employer in the amount of $ 68,800.00, as evidenced by the Form IT-201-X, New York State Amended Resident Income Tax Return which was filed with New York State by petitioners. A copy of this Form IT-201-X is attached as Exhibit 3-C. Paragraph 8 of the stipulation reads as follows: In 1989, petitioners agreed to an increased amount of $ 52,499.00 in unreported income to New York State, as evidenced by the Department of Taxation and Finance, Income - Audit Report, a copy of which is attached as Exhibit 5-E *574 Generally, a stipulation of fact is controlling on the parties, and the Court is bound to enforce it. Rule 91(e). Rule 91(e) provides in relevant part: (e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. * * * Accordingly, this Court does not lightly disregard facts which the parties have stipulated; however, where such facts are clearly contrary to facts disclosed by the record, the Court may refuse to be bound by the stipulation. Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976). Petitioners' argument hinges upon the distinction between the "received" language in paragraph 6 and the "agreed to" language contained in paragraph 8. Although paragraph 6 denotes receipt and is an admission, paragraph 8 also admits that petitioners agreed with the State to an additional increased amount in unreported income. The fact that petitioner *575 husband did not stipulate that he "received" the increase is, in the setting of this case, a distinction without a difference. The stipulation is clear and unambiguous and the record does not disclose any facts to refute or contradict the stipulation. Although petitioners have tried to capitalize on a difference in the wording of the stipulation, we consider petitioners' argument to be superficial and unsupported by the evidence. Petitioners have not advanced contrary evidence to overcome the evidence offered by respondent and we are not persuaded by petitioners' semantic hairsplitting. We also note that if petitioners believed the stipulation to be in error, they had ample opportunity to raise and clarify this matter during the stipulation process and at the time of trial. Accordingly, respondent is sustained on this issue. 2. Increase in Additions to Tax -- Section 6653(a)
Respondent's amendment to answer asserted an increase in the addition to tax for negligence under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules *576 or regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. For purposes of this statute, negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). In light of petitioners' concessions with respect to the underreporting of income and our conclusion that respondent has put forth evidence sufficient to satisfy the burden of proof with respect to the underreporting of income as asserted in the amendment to answer, we hold that petitioners were negligent. 3. Increase in Additions to Tax -- Section 6651
Section 6651(a)(1) imposes an addition to tax for failure to timely file a return (determined with regard to any extension of time for filing) at the rate of 5 percent of the amount of tax due per month up to 25 percent in the aggregate. The failure to file addition *577 to tax is applicable unless it can be shown that the failure to file a tax return was not due to willful neglect and was due to reasonable cause. These two standards have been discussed in case law over a 70-year period and were defined by the Supreme Court as follows: As used here, the term "willful neglect" may be read as meaning a conscious, intentional failure or reckless indifference. See Orient Investment & Finance Co. v. Commissioner, 83 U.S.App.D.C. 74, 75, 166 F.2d 601, 602 (1948); Hatfried, Inc. v. Commissioner, 162 F.2d 628, 634 (CA3 1947); Janice Leather Imports Ltd. v. United States, 391 F.Supp. 1235, 1237 (SDNY 1974); Gemological Institute of America, Inc. v. Riddell, 149 F.Supp. 128, 131-132 (SD Cal. 1957). Like "willful neglect," the term "reasonable cause" is not defined in the Code, but the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised "ordinary business care and prudence" but nevertheless was "unable to file the return within the prescribed time." 26 CFR § 301.6651(c)(1) (1984); accord, e.g., Fleming v. United States, 648 F.2d 1122, 1124 (CA7 1981); *578 Ferrando v. United States, 245 F.2d 582, 587 (CA9 1957); Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769, 770 (CA2 1950); Southeastern Finance Co. v. Commissioner, 153 F.2d 205 (CA5 1946); Girard Investment Co. v. Commissioner, 122 F.2d 843, 848 (CA3 1941) * * * [United States v. Boyle, 469 U.S. 241, 245-246 (1985); fn. ref. omitted.] Whether the late filing of an income tax return is due to reasonable cause or willful neglect is a question of fact. Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir. 1964), affg. on this issue 37 T.C. 962 (1962). As an accountant, petitioner husband was aware of his obligation to timely file an income tax return. Although petitioners sought and were twice granted extensions for time to file, they nonetheless failed to timely file their return. The record shows that petitioners' failure to timely file was not due to reasonable cause and was due to willful neglect. Accordingly, we sustain respondent on this issue. 4. Increase in Additions to Tax -- Section 6661
Section 6661 imposes an addition *579 to tax equal to 25 percent of an underpayment attributable to an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). Section 6661(b)(2) provides an exception in cases where the taxpayer had substantial authority for the position taken on the return or adequately disclosed the relevant facts affecting the item's tax treatment. An understatement is defined as the tax required to be shown on the return less the tax shown on the return, reduced by any rebates. Sec. 6661(b). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners have not argued for a reduction based on a position supported by substantial authority or attributable to facts adequately disclosed on the return. In light of our determination that respondent has satisfied her burden with respect to the increased deficiency in tax, and as the original amount of the deficiency determined in the statutory notice exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return, respondent's burden with respect to *580 the increase in the addition to tax under section 6661 has also been satisfied. Accordingly, respondent is sustained on this issue. 5. Innocent Spouse Relief -- Section 6013(e)
When a husband and wife file a joint Federal income tax return, liability for the tax due is joint and several; hence each spouse may be required to pay the entire amount. Sec. 6013(d)(3). Relief is provided under the innocent spouse provisions of section 6013(e). That section states: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be *581 relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. All four statutory requirements must be met for the taxpayer to be afforded relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Estate of Jackson v. Commissioner, 72 T.C. 356, 360 (1979). The burden of proof is on petitioner wife to prove that she satisfies each element of the requirements of section 6013(e)(1). Welch v. Helvering, 290 U.S. 111 (1933); Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The parties agree that the requirements of section 6013(e)(1)(A) and (B) have been met. At issue are the requirements under section 6013(e)(1)(C) and (D). As to the knowledge requirement of section 6013(e)(1)(C), petitioner wife must establish that she did not know, and had no reason to know, of the substantial understatement of tax. The test applied to determine whether a spouse had reason to know is whether a reasonably prudent person in the taxpayer's position *582 had reason to know or would be expected to know that the tax liabilities were substantially understated. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975). The reason-to-know standard imposes a duty of inquiry on the spouse claiming relief. Stevens v. Commissioner, supra.
Petitioner wife was not involved in her husband's business. Petitioner wife relied upon her husband to handle the family finances and, in light of the fact that he is an accountant, we find her reliance was reasonable. Petitioner wife was responsible for paying ordinary household expenses and in so doing lived within the constraints of a family budget in accord with the salary she believed her husband earned. However, a spouse cannot close her eyes to facts that might give her reason to know of the unreported income. Terzian v. Commissioner, 72 T.C. 1164, 1171 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972). While Mr. Blumberg concealed certain of his activities from Mrs. Blumberg, *583 we do not find that a reasonably prudent person in her circumstances was without reason to know or could not be expected to know of the unreported income. The bank statements for the joint accounts at Fidelity Cash Reserves and Manufacturers Hanover Trust were mailed to the marital residence in the name of both petitioners. Petitioner wife testified that she was aware and involved in the purchase and construction of the Pound Ridge property, the total cost of which exceeded $ 350,000. The evidence presented pertaining to petitioners' real estate transactions demonstrates that beginning in April of 1984 and extending into 1985, petitioners had a net outlay of funds totaling over $ 200,000 for the purchase and construction of this property, based on total costs in excess of $ 350,000 less the proceeds realized from the sale of their West Mountain residence and the $ 100,000 mortgage loan obtained in December 1984. Petitioner wife testified that $ 70,000 from her son's inheritance was also used to finance the home; however, no evidence was offered other than her self-serving testimony. Moreover, according to the record, the receipt of the claimed inheritance was sometime later than *584 the timeframe of these transactions. We conclude under these circumstances that petitioner wife was aware or should have known of petitioner husband's additional income. The final element petitioner wife must prove is that, under all the facts and circumstances, it is inequitable to hold her liable for the deficiencies attributable to the substantial understatements in tax. Sec. 6013(e)(1)(D). We will address this final element for completeness. In deciding whether it is inequitable to hold petitioner wife liable for the deficiencies, we take into account whether she significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant benefit for purposes of determining whether it is inequitable to hold petitioner liable for a deficiency. Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Terzian v. Commissioner, supra at 1172; sec. 1.6013-5(b), Income Tax Regs. However, evidence of significant benefit arises from transfers of property to the spouse even where the benefit *585 from such transfer is received several years after the year of the omitted income. Terzian v. Commissioner, supra at 1172 (citing the report of the Senate Finance Committee, S. Rept. 91-1537 (1970), 1971-1 C.B. 606, 608); sec. 1.6013-5(b), Income Tax Regs.
As discussed above, petitioners' net outlay for the jointly owned Pound Ridge property was over $ 200,000. Petitioners sold the Pound Ridge property, utilizing the proceeds to purchase their current residence in South Salem, which is solely owned by petitioner wife. We cannot conclude that it would be inequitable to hold petitioner wife liable for the deficiencies in income tax because as the sole owner of the South Salem residence she derived a significant benefit from the transfer of funds attributable to the omitted items of income. In addition, when contrasted with the $ 2,239 of interest income petitioners jointly reported on their 1983 Federal income tax return, the fact that petitioner wife's New York State resident income tax return reflects her receipt of $ 8,339 in interest income in 1984 suggests that petitioner wife had a significant increase in funds on deposit in her own *586 accounts during 1984 attributable to the omitted items of income. Furthermore, petitioner wife received a significant benefit from the acquisition of recording equipment with a depreciable basis of $ 11,211 which was placed in service in 1984. Accordingly, a consideration of these elements shows that petitioner wife is not entitled to innocent spouse relief under section 6013(e). To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners have conceded the deficiencies and additions to tax as originally determined in respondent's statutory notice of deficiency.↩
3. It is this amount which formed the basis for respondent's amendment to answer in which increased deficiencies in income tax and additions to tax are sought. We note that respondent bears the burden of proof as to the additional income asserted in the amendment to answer. ↩
4. Although the parties use July 15, 1988, as the date of conviction, the documentary evidence shows July 13, 1988, to be the correct date.↩
5. We note that immediately prior to the close of trial, counsel for respondent stated that he "would like to move for a [sic] partial summary judgment on the additional income issue". In response to this request, the Court advised the parties that this issue was to be addressed on brief.↩