**HANDLEY MOTOR COMPANY, Inc.**
v.
**The UNITED STATES.**
**No. 101–62.**

United States Court of Claims.
Nov. 13, 1964.

Marc E. Bettius, Washington, D. C., for plaintiff. George D. Webster, and Davies, Richberg, Tydings, Landa & Duff, Washington, D. C., were on the brief.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COWEN, Chief Judge.

Plaintiff seeks a refund of excise taxes, interest and additions to tax for non-filing, arising out of the purchase of 50 Volkswagen automobiles in Europe. Two principal issues are presented for our determination: (1) Is plaintiff the "importer" of the automobiles and therefore liable for the excise tax upon their sale as provided in 26 U.S.C. (I.R.C.1954) § 4061 (1958 Ed.)?[1] (2) Was plaintiff's failure to file an excise tax return "due to reasonable cause and not due to willful neglect", thereby rendering the addition to tax imposed by 26 U.S.C. (I.R.C.1954) § 6651 (1958 Ed.)[2] inapplicable?

The findings of fact made by the trial commissioner have been accepted by both parties but each has requested additional findings. After a study of the record, we have denied these requests but have added one finding of ultimate fact.

Plaintiff is a corporation doing business in the District of Columbia and is principally engaged in the retail sale of automobiles. Its main product line is Ford motor cars.

On November 10, 1958, the Amerifact Corporation of New York City placed an advertisement in a trade publication, stating that it would ship Volkswagen automobiles, equipped to meet American safety requirements, directly from Germany and that the cost would be about $1,575, including freight to New York, duty, insurance, and brokerage. Amerifact was regularly engaged in the importation of notions and novelties but not automobiles.

Mr. Ernest Apfelbaum, secretary-treasurer of Amerifact, had learned through Rohlig & Company, a German freight forwarding concern, that Armin Wiedemann, a German automobile dealer, was willing to sell Volkswagens to American firms, f. o. b. Hamburg, at a price of $1,300 per unit, plus $35 for the equipment necessary for American safety standards. Amerifact revised its advertisement on December 8, 1958, to state that the Volkswagens "would be shipped" at a price of $1,360, f. o. b. Hamburg, Germany, and that the total cost, including freight to New York and the additional items mentioned above, would amount to about $1,575 per automobile.

Plaintiff was interested in obtaining new Volkswagens at the advertised price and during the latter part of November 1958, the plaintiff authorized John B. O'Connell of the Fidelity Union Trust

---

1. "§ 4061. Imposition of tax

(a) *Automobiles.*—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

\*　　\*　　\*　　\*　　\*

"(2) Articles taxable at 10 percent except that on and after July 1, 1959, the rate shall be 7 percent—

"Automobile chassis and bodies other than those taxable under paragraph (1).

"Chassis and bodies for trailers and semitrailers (other than house trailers) suitable for use in connection with passenger automobiles.

"A sale of an automobile, trailer, or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body."

2. "§ 6651. Failure to file tax return

"(a) *Addition to the tax.*—In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate."

Company of Newark, New Jersey, to make arrangements for the purchase of not more than 50 Volkswagens at a unit price of $1,360 to be paid on delivery at a specified port. Since 1954, Fidelity had assisted plaintiff in financing the sale of its automobiles. Most of such assistance was extended through Mr. O'Connell, who was then assistant treasurer of Fidelity.

Thereafter, in the course of telephone conversations with Mr. Apfelbaum, Mr. O'Connell, who had had no previous contact with Amerifact, stated his interest in obtaining the Volkswagens at the prices advertised, provided a clear title could be obtained when payment was made. On December 1, 1958, Fidelity sent a letter to Amerifact, authorizing it to draw upon Fidelity for the purchase by plaintiff (whose business address was stated) of 50 new Volkswagens at $1,360 per unit to be paid after delivery of the autos in December 1958 at the Port of Baltimore. The letter stated that the $1,360 included a unit cost, f. o. b. Hamburg, of $1,300, plus $25 purchase commission, and $35 for the installation of safety glass windshields, turn signals and sealed beam lamps. The letter also required the drafts to be accompanied by a commercial invoice from a German automobile dealer in plaintiff's name, a consular invoice, a German title for each automobile, and on board ocean bills of lading marked "freight collect", issued to the order of the shipper, and duly endorsed.

On the basis of the letter from Fidelity, Amerifact secured from the Bankers Trust Company of New York an international letter of credit, guaranteeing payment to Rohlig & Company, which was to act as the freight forwarder for Mr. Wiedemann, the German automobile dealer. In reliance on the letter of credit, Mr. Wiedemann delivered the Volkswagens to the freight forwarder for shipment to plaintiff in Baltimore, Maryland, on a price basis, f. o. b. Hamburg. Pursuant to the requirements stated in Fidelity's letter of December 1, 1958, Mr. Wiedemann furnished the freight forwarder German titles to the automobiles and commercial invoices in which Wiedemann was listed as consignor and plaintiff as consignee. Rohlig & Company then prepared consular invoices, listing the seller of the automobiles as "by order of Rohlig & Company" and the purchaser as plaintiff. Rohlig also received bills of lading in which Rohlig was listed as shipper and plaintiff as the recipient. The documents mentioned were forwarded by Rohlig to Bankers Trust Company, which sent them to Fidelity. All such documents were then forwarded to plaintiff by Fidelity. In none of the documents was Amerifact named as vendor, vendee, consignor, consignee, shipper, recipient, exporter, or importer.

When the automobiles arrived in Baltimore with freight charges due, Fidelity sent a Baltimore freight forwarder copies of the bills of lading, customs invoice, and commercial invoice, and authorized the forwarder to release the vehicles to plaintiff upon payment of the freight and customs duty. After payment of such charges, plaintiff authorized the freight forwarder to deliver the automobiles to a trucking concern, which transported them from Baltimore to plaintiff's place of business in Washington, D. C.

Upon receipt of the Volkswagens, plaintiff discovered that some had not been equipped with the required safety glass or sealed beam headlights, and sent Amerifact an invoice for the cost of installing the additional equipment. Amerifact thereupon sent the bill to Mr. Wiedemann who paid it.

In order to secure certificates of title from the District of Columbia, plaintiff requested and obtained from Amerifact bills of sale conveying the latter's right, title, and interest in each car to plaintiff. On the basis of these bills of sale, plaintiff's application listing Rohlig & Company of Hamburg as plaintiff's source of ownership, and other papers, certificates of title were issued by the District of Columbia.

Throughout the business dealings described above, nothing was said by Mr. O'Connell, Mr. Apfelbaum, Bankers Trust

Company, or plaintiff, regarding the payment of or liability for an excise tax on the Volkswagens.

There is a direct conflict in the testimony of Mr. O'Connell and that of Mr. Apfelbaum on important aspects of the transaction concluded between them. Mr. O'Connell maintained that the automobiles were purchased from Amerifact with the understanding that the European end of the deal would be handled by a partner of Amerifact residing in Europe, whereas Mr. Apfelbaum testified he informed Mr. O'Connell that Amerifact could obtain the Volkswagens in Europe on a brokerage basis and would expect to be paid a brokerage fee of $25 per car. Mr. Apfelbaum's version was accepted by the trial commissioner, whose findings of fact we have adopted. Plaintiff has not made a showing sufficient to overcome the presumption accorded by our rules to these findings of the trier of the facts.

## I

█ █ The excise provided in section 4061 is levied on the first sale in the United States by a manufacturer, producer or importer. Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277 (1931); United States Truck Sales Co. v. United States, 229 F.2d 693 (6th Cir. 1956). A determination of who is the "importer" does not in the first instance turn on the law of sales. We think the "importer" is the first purchaser resident in the United States who arranges (as principal and not as an agent) for the goods to be brought into the United States, Rev.Rul. 60–106, 60–1 C.B. 490; cf Rev.Rul. 56–409, 56–2 C.B. 796. The "importer" may in fact take title in the United States from the foreign seller, cf. Hooven & Allison Co. v. Evatt, 324 U.S. 652, 662–663, 65 S.Ct. 870, 89 L.Ed. 1252 (1945); Blumenthal Print Works v. United States, 51 F.Supp. 208, 212 (E.D.La.1943). To

make the definition of "importer" turn exclusively on the place of sale would, in many instances, place the tax on a person or corporation who is resident in a foreign country, and who, as a practical matter, would be inaccessible to collection procedures. The issue of "transfer" and "title passage" under the law of sales may be pertinent when it is necessary to establish which of two resident persons or corporations is the "importer", see e. g. Amtorg Trading Corporation v. Higgins, 150 F.2d 536 (2d Cir. 1945). The parties in this action have assumed that either Amerifact or plaintiff is the importer.

The facts in this case, when reviewed in their entirety, are consistent with the trial commissioner's finding to the effect that Amerifact acted as a broker or finder for plaintiff. Fidelity's letter of December 1, 1958, made specific reference to a purchase commission and required that commercial invoices be issued by a German automobile dealer in the name of plaintiff. Plaintiff paid all the freight charges and customs duties; the shipping and transfer documents listed plaintiff and not Amerifact as the purchaser or consignee; Amerifact was not an established automobile dealer. Plaintiff received the automobiles directly from the European seller and made all the arrangements required for their receipt and delivery to its place of business. The evidence does not establish that Amerifact was to enter into the chain of title.[3] Plaintiff may be viewed either as the first purchaser resident in the United States, or as the person or corporation primarily responsible for the entry of the automobiles into the United States as a matter of fact.

█ Accordingly, we hold that plaintiff was the importer of the Volkswagens in issue and became liable for the excise due when it sold them in this country, since there had been no previous sale by a manufacturer, producer, or importer.

---

3. The bills of sale given by Amerifact to plaintiff after the automobiles were delivered to plaintiff were not a part of the initial arrangements between the parties; these documents were furnished to satisfy the requirements of the District of Columbia with respect to registration and title certificates.

## II

Because of plaintiff's failure to file an excise tax return with respect to the sale of the automobiles involved here, the Commissioner of Internal Revenue assessed a penalty pursuant to the provisions of Section 6651 of the 1954 Internal Revenue Code. The importance of the timely filing of tax returns in our system of self-assessment was emphasized by the Supreme Court in Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944) and the numerous penalties with which nonfiling has been surrounded disclose a congressional policy to encourage the filing of tax returns. Spies v. United States, 317 U.S. 492, 495, 63 S.Ct. 364, 87 L.Ed. 418 (1942).

The term "reasonable cause" in section 6651 has been interpreted to mean no more than the exercise of ordinary business care and prudence. In re Fisk's Estate (Fisk v. Commissioner), 203 F.2d 358 (6th Cir. 1953); Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769 (2d Cir. 1950). The burden of the proof is on the taxpayer to prove reasonable cause for failure to file a return when required to do so under the provisions of the Internal Revenue Code. Breland v. United States, 323 F.2d 492, 497 (5th Cir. 1963); Paymer v. Commissioner, 150 F.2d 334, 337 (2d Cir. 1945). Whether the elements which constitute reasonable cause are present is a question of fact to be determined in each case.[4] Orient Investment & Finance Co. v. Commissioner, 83 U.S.App.D.C. 74, 166 F.2d 601, 604, 3 A.L.R.2d 612 (1948).

Plaintiff maintains that it filed no return because it believed, in good faith, that no tax was due since plaintiff considered Amerifact to be the seller and importer of the automobiles. The record shows that at no time during the transaction was the question of an excise tax discussed by any of plaintiff's officers, by Mr. O'Connell, or by Mr. Apfelbaum. In the discussions between Mr. O'Connell and Mr. Apfelbaum and between plaintiff's vice president and Mr. O'Connell, specific mention was made of the cost of the automobiles, the safety equipment, freight charges, a purchase commission, and customs duties, but no reference was made to excise taxes. Through its dealings with the Ford Motor Company, plaintiff was aware of the fact that Ford's invoices included an item for excise taxes, although there is no evidence that plaintiff had previously filed excise returns or had directly paid excise taxes on automobiles.

Mr. O'Connell testified that he never considered the question of an excise tax in connection with the transaction. Plaintiff's vice president testified that: the matter of an excise tax was never considered by plaintiff; plaintiff was never informed that an excise tax had been paid; plaintiff sought no legal or professional advice as to whether such a tax was due; plaintiff would never have purchased the automobiles if it had known that an excise tax would be due; plaintiff was willing to buy the automobiles at the net price quoted and did not care who the seller was. While we do not question the good faith of plaintiff's officers, it is apparent that plaintiff paid little, if any, attention to the tax incidents of the transaction. Therefore, we have found that plaintiff has not shown by a preponderance of the evidence that it exercised ordinary business care and prudence in connection with its failure to file an excise tax return.

Plaintiff relies on Palm Beach Trust Co. v. Commissioner, 84 U.S.App.D.C.

4. See 10 Mertens, Law of Federal Income Taxation. § 55.23 (1958) "The existence of reasonable cause is in the first instance a question of fact for the lower court. What elements must be present to constitute reasonable cause is a question of law. The taxpayer bears the burden of proving reasonable cause.

* * * * *
"Mere uninformed and unsupported belief by a taxpayer, no matter how sincere that belief may be, that he is not required to file a tax return, is insufficient to constitute reasonable cause for his failure so to file. * * * "

410, 174 F.2d 527 (1949), cert. den., 338 U.S. 825, 70 S.Ct. 71, 94 L.Ed. 501, reversing 9 T.C. 1060; and Estate of Oei Tjong Swan, 24 T.C. 829 (1955). An examination of the Tax Court's opinion in Palm Beach shows that in contrast to the case at bar, there were, in addition to the taxpayer's belief, several circumstances which two dissenting judges considered sufficient to prove reasonable cause. In that case, which involved a surtax on the undistributed income of a personal holding company, the taxpayer was organized and operated as a bank under Florida law and, as such, literally fell within the definition of a bank in a section of the Internal Revenue Code that excluded banks from the tax on personal holding companies. Further, the Commissioner of Internal Revenue had not required the taxpayer to file returns for prior years. We infer that the Court of Appeals relied upon these additional circumstances in holding that the failure to file the return was due to reasonable cause.

The Swan case was one in which there was a delayed tax return rather than a failure to file. There, the taxpayer, who was obligated to file an estate tax return, resided in Holland, which was occupied by German troops at the time of decedent's death and for several years thereafter. The physical impossibility of filing the return during the military occupation, plus other circumstances detailed in the opinion of the Tax Court led it to decide that the delay in filing the estate tax return was due to reasonable cause. The decision does not support plaintiff's position.

It is generally recognized that the presence of certain factors, in addition to the honest belief of the taxpayer, constitutes reasonable cause for the failure to file a return, e. g., the advice of a competent accountant or attorney; Mayflower Investment Co. v. Commissioner, 239 F.2d 624 (5th Cir. 1956); Hatfried, Inc. v. Commissioner, 162 F.2d 628 (3d Cir. 1947); or reliance on the statements of an Internal Revenue agent, Druggists' Supply Corp., 8 T.C. 1343 (1947).

We do not hold that a taxpayer's reliance upon the advice of an attorney, accountant, or revenue agent is an indispensable element of reasonable cause, for as shown in Estate of Oei Tjong Swan, supra, there are other elements which may be sufficient to establish that the taxpayer exercised ordinary business care and prudence. However, after a careful review of the record, we are impelled to conclude that the evidence offered by plaintiff is insufficient to discharge the burden imposed upon the taxpayer by section 6651. West End Co., 23 T.C. 815 (1955). Plaintiff's petition is dismissed.