Nathaniel **WEINER**, Plaintiff,

v.

**UNITED STATES** of America,
Defendant.

No. 63–1548–AAH.

United States District Court
C. D. California.

Dec. 2, 1966.

Nossaman, Waters, Scott, Krueger & Riordan and A. S. Kaufer, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Section, and Donald M. Fenmore, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## DECISION, FINDINGS OF FACT and CONCLUSIONS OF LAW

HAUK, District Judge.

This is an action for refund of internal revenue taxes brought by plaintiff, Nathaniel Weiner, doing business as Jeffrey Jones Auto Sales in South Gate, California, and engaged in selling used automobiles.

In April of 1959 plaintiff entered into an agreement with New Emco, Inc., under which New Emco would deliver to plaintiff 15 used Volkswagen automobiles free and clear of all taxes, liens, import duties and other encumbrances. Such automobiles were to be delivered to plaintiff at his place of business in South Gate, California, together with all documents necessary to pass title. Plaintiff on April 13 obtained and delivered a cashier's check to the Bank of America, payable to the Bank as holder of the title papers. The automobiles were cleared through customs on April 14 by James Loudon & Co., customs brokers, acting as agents for New Emco, Inc., and were subsequently delivered to plaintiff in South Gate on April 15. The title papers for the said automobiles were delivered to plaintiff sometime between April 13 and April 15.

Three years later, in 1962, the Internal Revenue Service made a determination that plaintiff was the "importer" of the 15 Volkswagen automobiles under Section 4061(a) of the 1954 Internal Rev-

enue Code, 26 U.S.C.A. § 4061(a),[1] and assessed plaintiff for a tax of $2,747.00 under that section. Added to this tax was a penalty of $686.75 under Section 6651(a) of the Code, 26 U.S.C.A. § 6651 (a), and interest of $494.33. The total of $3,928.08 was paid by plaintiff, who then filed claim for refund.

When the claim was denied this action was then commenced to recover the $3,-928.08 together with interest, jurisdiction being founded on 28 U.S.C.A. § 1340 [2] and § 1346(a) (1).[3]

The action came before the Court upon cross motions for summary judgment.[4] After study of the pleadings, including affidavits, answers to interrogatories and admissions, and after analysis of the motions and exhibits introduced in support thereof, the Court conducted extensive hearings in which the points and authorities offered by the parties were fully presented in lengthy arguments made by opposing counsel.

Now, after full consideration of the matter, the Court makes its decision, findings of fact and conclusions of law, ordering summary judgment in favor of plaintiff and against defendant United States of America in the sum of $3,-928.08 with interest thereon at the rate of 6 percent per annum from April 27, 1962, as provided by law.

## FINDINGS OF FACT

1. Plaintiff, at all times relevant, was a resident of the County of Los Angeles, State of California, and of the Central District of California.

2. That defendant United States of America is a sovereign body politic.

3. That this is an action for refund of Internal Revenue taxes arising under 28 U.S.C. §§ 1340 and 1346(a) (1).

---

1. 26 U.S.C.A. § 4061. *Imposition of tax.*
   "(a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:
   "(1) Articles taxable at 8 percent, except that on and after April 1, 1956, the rate shall be 5 percent—
   Automobile truck chassis.
   Automobile truck bodies.
   Automobile bus chassis.
   Automobile bus bodies.
   Truck and bus trailer and semitrailer chassis.
   Truck and bus trailer and semitrailer bodies.
   Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.
   A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body.
   "(2) Articles taxable at 10 percent except that on and after April 1, 1956, the rate shall be 7 percent—
   Automobile chassis and bodies other than those taxable under paragraph (1).

Chassis and bodies for trailers and semitrailers (other than house trailers) suitable for use in connection with passenger automobiles.
Motorcycles.
A sale of an automobile, trailer, or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body."

2. 28 U.S.C.A. § 1340.
   "§ 1340. *Internal revenue; customs duties*
   The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."

3. 28 U.S.C.A. § 1346(a) (1).
   "§ 1346. *United States as defendant*
   (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
   "(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;"

4. Rule 56, Federal Rules of Civil Procedure.

4. That on or about April 20, 1962, defendant assessed against plaintiff a deficiency in excise tax in the sum of $2,747.00, penalties in the sum of $686.75, and interest in the sum of $494.33.

5. That on April 27, 1962, plaintiff paid to defendant the assessment set forth in paragraph 4 herein, to wit, the sum of $3,928.08.

6. That on or about May 17, 1963, plaintiff duly filed a claim for refund of said $3,928.08 which claim was disallowed by defendant by notice dated February 6, 1964.

7. That the 15 used Volkswagen automobiles on which the within tax was assessed arrived in the port of Los Angeles in or around March, 1959. Plaintiff did not have title to said automobiles nor did he have any interest in said automobiles prior to or at the time they arrived in Los Angeles, nor was plaintiff aware that said automobiles were going to arrive in Los Angeles.

8. On or about April 13, 1959, plaintiff and New Emco, Inc. entered into an oral agreement which provided in pertinent part that New Emco, Inc. would sell to plaintiff 15 used Volkswagen automobiles free and clear of all taxes, liens, import duties and other encumbrances and deliver said automobiles to plaintiff together with all documents necessary to pass title to plaintiff.

9. On April 13, 1959, plaintiff obtained a cashier's check for the purchase price of said automobiles and at the request of New Emco, Inc. had such check made payable to the Bank of America.

10. That said 15 automobiles were cleared through United States Customs on April 14, 1959, and were withdrawn from customs bonded warehouse on that date.

11. That neither plaintiff nor his agent withdrew said automobiles from a customs bonded warehouse on April 14, 1959.

12. That said automobiles were cleared through customs and were withdrawn from a customs bonded warehouse by James Loudon & Co., customs brokers, who were acting solely as agents for New Emco, Inc., the party which sold the automobiles to plaintiff. The parties intended New Emco, Inc. to be responsible for clearing customs and plaintiff contracted to buy cars which had cleared customs.

13. New Emco, Inc. delivered the said 15 Volkswagen automobiles to plaintiff on April 15, 1959.

14. Plaintiff did not obtain possession of said Volkswagen automobiles until after they had cleared customs and were withdrawn from a customs bonded warehouse. Plaintiff did not withdraw said Volkswagen automobiles from a customs bonded warehouse.

15. New Emco, Inc. did not act as an agent of plaintiff. Plaintiff did not arrange as principal or as agent for said Volkswagens to be brought into the United States.

16. There is a disputed fact as to whether or not all or part of the documents of title were delivered to plaintiff before or after said Volkswagen automobiles cleared customs. This disputed fact, however, does not establish a genuine issue as to any material fact within the meaning of Rule 56, Federal Rules of Civil Procedure.

17. In addition, the Court finds that all of the facts set forth in the affidavit of plaintiff filed in support of the motion for summary judgment are true except as to the date of delivery of the title documents which is the only fact controverted by affidavit by defendant and as to this fact, the Court makes no finding except as set forth in Finding No. 16 above.

## CONCLUSIONS OF LAW

1. That this Court has jurisdiction of the parties and of the subject matter of this action.

2. The term "importer" as used in Section 4061(a) of the Internal Revenue Code of 1954 is the person who arranges (as principal and not as agent) for goods to be brought into the United States. Handley Motor Co., Inc. v.

United States, 338 F.2d 361, 364 (168 Ct.Cl. 92, 1964).[5] In the language of the Internal Revenue Service, it is the person who "actually imports the taxable articles." Rev.Rul. 60–106, 60–1 Cum.Bul. 409.[6]

But plaintiff did not arrange for the 15 Volkswagens to be brought into the United States. Nor did he actually import the Volkswagens.

Again it has been held by the Internal Revenue Service that, under some circumstances, a person who withdraws taxable articles from a customs bonded warehouse for sale or use in the United States may be considered the "importer". Rev.Rul. 56–409, 56–2 Cum.Bul. 796.[7]

■ But plaintiff did not withdraw taxable articles from a customs bonded warehouse. Plaintiff, therefore, cannot be considered an "importer" within the meaning of Section 4061(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4061(a).

■ 3. Title documents to the Volkswagens were delivered by New Emco, Inc. to plaintiff either before or after the automobiles were withdrawn from a customs bonded warehouse. The date of delivery of the title documents is irrelevant and does not create a genuine issue as to a material fact because the contract between New Emco, Inc. and plaintiff provided for delivery of the automobiles by New Emco, Inc. to plaintiff. California Civil Code, § 1739, Rule 5. (Uniform Sales Act as enacted and in effect in California at the time in question here.)[8] This section provides that when a contract to sell goods requires delivery of the goods to the buyer, the property in the goods does not pass until after the goods have been delivered. Therefore title to the Volkswagen automobiles did not pass to plaintiff prior to the time they were delivered to plaintiff and delivery occurred after they had been withdrawn from a customs bonded warehouse by New Emco, Inc.

4. As between plaintiff and New Emco, Inc., title to the goods could not pass so long as New Emco, Inc. was required to do anything to enable the goods to be delivered to the plaintiff. California Civil Code, Section 1739, Rule

---

5. In this case the Court of Claims pointed out:
"[1, 2] The excise provided in section 4061 is levied on the first sale in the United States by a manufacturer, producer or importer. Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277 (1931); United States Truck Sales Co. v. United States, 229 F. 2d 693 (6th Cir. 1956). A determination of who is the 'importer' does not in the first instance turn on the law of sales. We think the 'importer' is the first purchaser resident in the United States who arranges (as principal and not as an agent) for the goods to be brought into the United States, Rev.Rul. 60–106, 60–1 C.B. 490; cf. Rev.Rul. 56–409, 56–2 C.B. 796."

6. "The applicability of the tax in the instant situation depends upon whether the individual actually imports the taxable articles and sells them in the United States." CCH Federal Tax Reporter, Rulings and Comments, 1959–1960 Transfer Binder, par. 6298, p. 5201. See also CCH Federal Excise Tax Reporter, par. 1818.172, p. 1253.

7. "The person who withdraws taxable articles from a customs bonded warehouse for sale or use in the United States is the 'importer' for purposes of the Manufacturers' Excise Taxes." 1956 CCH Federal Tax Reporter, par. 6666, p. 52,437. See also CCH Federal Excise Tax Reporter, par. 1817.17, p. 1252.

8. California Civil Code, Section 1739.
§ 1739. Rules for ascertaining intention.
"*RULES FOR ASCERTAINING INTENTION.* Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.
    *    *    *    *    *
"Rule 5. *Particular place of delivery.* If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of tranportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

2.[9] Accordingly, title to the Volkswagens did not pass to the plaintiff until after they had been withdrawn from the customs bonded warehouse which was New Emco's obligation.

5. The only disputed fact is the exact time of the delivery of title documents to plaintiff. But this is not a material fact nor a genuine issue, because title to the Volkswagens in question could not in any event have passed to plaintiff prior to the time they had been cleared through customs and withdrawn from a customs bonded warehouse.[10]

6. It follows that the manufacturers' excise taxes in question were illegally and erroneously assessed against, imposed upon and paid by plaintiff.

7. Plaintiff is entitled to recover from defendant the sum of $3,928.08, together with interest thereon at the rate of six percent (6%) per annum from April 27, 1962, until paid in accordance with the terms and provisions of Section 6611 of the Internal Revenue Code of 1954.

Summary judgment shall be entered accordingly, in favor of plaintiff and against defendant in the sum of $3,928.08, together with interest thereon at the rate of six percent per annum from April 27, 1962 until paid, as provided by law.

9. California Civil Code, Section 1739.

"Rule 2. *Specific goods not ready for delivery.* Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done."

10. Webber v. United States, United States District Court, Southern District of California, 63–210 CC, decided February 12, 1965 by our brother of the bench, Hon. Charles H. Carr, United States District Judge, Southern District of California. In *Webber*, just as here, the "parties intended New Emco, Inc. to be responsible for clearing customs and plaintiffs contracted to buy cars which had cleared customs." (Webber v. United States, supra, Finding of Fact No. 10, page 3, lines 3–5.)

It is true that in *Webber* the plaintiffs did not obtain possession of the title documents until the cars had been cleared through customs and withdrawn from a customs bonded warehouse, whereas here it is not known just when the title documents were delivered to plaintiff. But whether the title documents passed before or after the customs clearance and withdrawal is immaterial because the agreement and intention of the parties was that the automobiles were to be delivered to plaintiff after withdrawal from customs. And obviously the conclusion of law here should be the same as it was in *Webber*, where Judge Carr held "that plaintiffs did not obtain legal title to said automobiles until after they had been cleared through customs, and had been withdrawn from a customs bonded warehouse." (Webber v. United States, supra, Conclusion of Law No. 2, page 3, lines 22–25.)

Finally, the reliance of the Government upon *Webber* is totally misplaced, since in fact Judge Carr's decision buttresses our conclusion here that plaintiff was not an "importer" because he was *not* the person who brought the goods into port with intent to unload but *rather* the person who contracted for the cars after they had been brought into a port of the United States and unloaded. (Webber v. United States, supra, Conclusion of Law No. 4, page 3, line 24 —page 4, line 7.)