**EDUCATIONAL FUND OF the ELECTRICAL INDUSTRY, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

No. 65 Civ. 3606.

United States District Court
S. D. New York.

Aug. 21, 1969.

Harold Stern, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant, the United States; Richard M. Hall, Patricia M. Hynes, Asst. U. S. Attys., of counsel.

## OPINION

BONSAL, District Judge.

This is an action for a refund of $168,-338.53 in Federal income taxes paid by the plaintiff, Educational Fund of the Electrical Industry (Educational Fund) for the years 1958 through 1961. The court has jurisdiction under 28 U.S.C. § 1346.

The action was tried before the court without a jury and the parties thereafter submitted proposed findings of fact and conclusions of law.

Pursuant to Rule 52(a), F.R.Civ.P., the court makes the following findings of fact and conclusions of law.

In 1956 and 1957, Local 3 of the International Brotherhood of Electrical Workers (Local 3), a labor union representing electrical workers employed in and around New York City, was a party to a collective bargaining agreement (the labor agreement) with four employer associations of electrical contractors, and some 200 independent employers (the employers). The labor agreement provided for a Joint Industry Board (the Board), consisting of 12 representatives of Local 3, 12 representatives of the employers, and one representative of the public. The Board constituted several committees, among which were the Educational Committee, established in 1949 to administer a scholarship program for the children of employees, and the Vacation Committee, which administered a Vacation Expense Fund, into which the employers contributed 4% of their weekly production payroll and from which the Vacation Committee distributed vacation benefits for the employees.

In 1956 and 1957, the Education Committee met with representatives of Columbia University to discuss establishing a school of adult education for electricians. In 1957, a program was set up whereby electricians would be able to attend courses in basic thinking processes, civics, constitutional rights and related subjects, for one week annually at Bayberry Land, an estate in Long Island, owned by the ECH Holding Company, a New York corporation, the stock of which is held by the trustees of the Pension, Hospitalization, and Benefit Plan of the Electrical Industry. Electricians whose employers contributed to the Vacation Expense Fund were eligible to attend the week-long course at the Bayberry school. Since the electricians who would attend the Bayberry school would receive no wages during that week, the Educational Committee determined that it would be necessary to make some

payment to them to make up in part for wages and expenses. It was agreed that the Educational Fund would pay $140 to those electricians who attended the Bayberry school and satisfactorily completed the course, and that the money would be taken out of extra funds in the Vacation Expense Fund.

The labor agreement was modified in 1958 to incorporate provisions establishing the course at Bayberry school and providing for the payment of the $140. On February 17, 1959, the employers and Local 3 executed the Educational Fund of the Electrical Industry Agreement (the Educational Fund Agreement), which provided:

"all monies shall be deposited in a bank or trust company in the name of the 'Educational Fund of the Electrical Industry' and all withdrawals from such fund shall be signed and countersigned by two (2) trustees, one (1) of whom shall be an Employer-Trustee, and the other shall be a Union-Trustee, and accounted for to the Educational Fund of the Electrical Industry in semi-annual statements."

Thus, the 1959 Educational Fund Agreement formalized the practice which had been in effect since mid-1957.

The first group of electricians attended the course in June 1957. About 30 electricians attended each week and the course was given 40 to 45 weeks a year from 1957 through 1961, the years here involved. Electricians travelled to the Bayberry school at their own expense, stayed on the grounds from Sunday through Saturday, and attended classes, movies, and lectures. Purchase of books was not required, but the electricians spent a small amount on books during the week.

At the end of the week, checks for $140 were delivered to each electrician who had satisfactorily completed the course. No checks were given to those who had violated rules regarding conduct or who had not been in attendance for the full week.

At the end of each year, the Educational Fund sent letters to the electricians who had attended the Bayberry school that year and had received the payment of $140, informing them that the $140 would be considered income which they should report on their income tax returns.

The Educational Fund did not withhold income tax from the $140 checks. Because of the failure to withhold, the Internal Revenue Service assessed a tax deficiency, plus interest, and penalties, against the Educational Fund for the years 1958 through 1961, in the following amounts:

|  | Assessment | Penalty | Interest |
|---|---|---|---|
| 1958 | $29,635.20 | $7,408.80 | $10,562.18 |
| 1959 | 26,611.20 | 6,652.80 | 7,863.83 |
| 1960 | 27,871.20 | 6,967.80 | 6,608.28 |
| 1961 | 26,384.40 | 6,596.10 | 4,608.18 |

The Educational Fund paid the amount assessed, $167,769.87, plus an additional interest in the amount of $568.66 and timely filed a claim for refund of the total amount paid, $168,338.53. Thereafter, the Educational Fund commenced this action.

The questions presented are (1) whether the $140 paid by the Education-al Fund to the electricians who attended Bayberry school constituted "wages" within the meaning of 26 U.S.C. § 3401 (a); (2) if they did, whether the Educational Fund was an employer under 26 U.S.C. § 3401(d) liable for the payment of the tax required to be deducted and withheld under 26 U.S.C. § 3403; and (3) whether the Educational Fund

had "reasonable cause" for failure to pay the withholding tax.

### 1. "Wages"

Section 3401(a) provides that "the term 'wages' means all remuneration * * * for services performed by an employee for his employer * * *."

The electricians who attended the Bayberry school were not performing services at that time for their employers, the electrical contractors who had contributed to the Vacation Expense Fund, or for the Educational Fund which paid them the $140.

However, they had performed, or were available to have performed, services for the employers in the past. From the testimony of Harry Van Arsdale, Local 3's Business Manager during the period in question, and Efrem Kahn, chairman of the Board in 1956 and 1957, it appears that the $140 was compensation for services already rendered to the various employers who contributed to the Vacation Expense Fund. From the point of view of these employers, the payment of $140 and the course at the Bayberry school, were, along with pensions, vacations, sick pay, and other benefits, all part of the employment relationship.

The Regulations promulgated under section 3401 provide, in relevant part:

§ *31.3401(a)–1 Wages—(a) In general.*

(1) The term 'wages' means all remuneration for services performed by an employee for his employer * * *

(2) The name by which the remuneration for services is designated is immaterial. Thus, salaries, fees, bonuses, commissions on sales or on insurance premiums, pensions, and retired pay are wages within the meaning of the statute if paid as compensation for services performed by the employee for his employer.

(3) The basis upon which the remuneration is paid is immaterial in determining whether the remuneration constitutes wages. Thus, it may be paid on the basis of piecework, or a percentage of profits; and may be paid hourly, daily, weekly, monthly, or annually."

Furthermore, in Rev.Rul. 57–316, the Commissioner of Internal Revenue has ruled that payments made to employees out of a

"vacation fund, to be used solely for the purpose of making vacation payments to eligible employees, * * * established pursuant to a labor agreement, entered into by an association of employers and an employees' union * * * are definitely a part of the wage structure and * * * constitute additional 'wages' * * *"

■ Therefore, the court concludes that the $140 were "wages" within the meaning of section 3401.

### 2. "Employer"

Section 3402 provides:

"Every employer making payment of wages shall deduct and withhold upon such wages * * * a tax determined in accordance with the following tables."

Section 3401(d) defines "employer" as

" * * * the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for purposes of subsection (a) means the person having control of the payment of such wages * * *."

Section 3403 imposes liability on an employer "for the payment of the tax required to be deducted and withheld under this chapter."

The Educational Fund was not the "employer" of the electricians who attended the Bayberry school because the electricians were not performing services for the Educational Fund. However, the Educational Fund was the

"person having control of the payment" of the $140 paid to each electrician.

Regulation Sec. 31.3401(d)–1(f) provides:

"If the person for whom the services are or were performed does not have legal control of 'the payment of the wages for such services,' the term 'employer' means * * * the person having such control. For example, where wages, such as certain types of pensions or retired pay, are paid by a trust and the person for whom the services were performed has no legal control over the payment of such wages, the trust is the 'employer.'"

In addition, Rev.Rul. 57–316 provides that, with respect to the liability for taxes to be withheld on vacation allowances, which are deemed to be "wages,"

"the trustees [of the vacation fund] have control of the payment of the vacation allowances * * * Accordingly, as the 'employer' of the union employees for income withholding purposes, the trustees are responsible for the withholding of Federal income tax from the vacation allowances of each employee."

This ruling is clearly authorized by section 3401(d) (1), and the legislative history of sections 3401(d) and 3403. See H.Rep.No. 268, 78th Cong., 1st Sess., March 19, 1943, p. 10; Century Indemnity Co. v. Riddell, 317 F.2d 681 (9th Cir. 1963.)

■ Therefore, for reasons stated, the court finds that the Educational Fund was an "employer" for purposes of deducting the withholding tax on each payment of $140 to the electricians who attended the Bayberry school.

*3. "Reasonable cause"*

■■ The Internal Revenue Service assessed a penalty under 26 U.S.C. § 6651 of 25% of the total tax due for each year. The Educational Fund has the burden of proving "reasonable cause" for failure to withhold and to pay the tax withheld for the years 1957

through 1961. Handley Motor Co. v. United States, 338 F.2d 361, 168 Ct.Cl. 92 (1964). Ordinarily, reliance on an attorney's opinion that tax need not be paid is "reasonable cause" for failure to pay the tax. Haywood Lumber & Milling Co. v. C. I. R., 178 F.2d 769 (2d Cir. 1950).

■ On December 12, 1957, the Educational Fund, through its counsel, requested a ruling from the District Collector of the Internal Revenue Service who ruled on January 16, 1958 that "the amounts so paid are considered to be subject to withholding * * * pursuant to provisions of sections 3401(a) and 3401(d) (1) of the 1954 Code."

In view of this ruling the failure to withhold and pay the tax was not based upon "reasonable cause" under section 6651, and the assessment of the penalty was mandatory. C. I. R. v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944).

■ The Educational Fund introduced evidence that one of the electricians who attended the Bayberry school, William Hanson, reported the $140 on his income tax return and paid the tax. Accordingly, under section 3403 and Regulation section 31.3402(d)–1, the Educational Fund should not be required to pay the tax, penalty, and interest on the payment to Mr. Hanson.

The foregoing constitutes the court's findings of fact and conclusions of law, Rule 52(a), F.R.Civ.P.

The Clerk may enter judgment in favor of the Educational Fund against the United States in the amount of the tax on $140 plus interest and penalties with respect to the payment made to William Hanson, and judgment in favor of the United States against the Educational Fund dismissing its claim for refund with the exception of the payment to William Hanson. Settle judgments on notice.

It is so ordered.