

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

July 17, 1974

The Honorable Jackie W. St. Clair
Commissioner
Texas Dept. of Labor & Standards
Box 12157, Capitol Station
Austin, Texas 78711

Opinion No. H- 350

Re: Whether it is permissible
under the prevailing Wage
Statute, Art. 5159a,, to include
fringe benefits.

Dear Commissioner St. Clair:

Your request for an opinion on the above subject matter poses
the question of whether a public body, awarding any contract for public
work on behalf of the State, or on behalf of any county, city or other
political subdivision under Art. 5159a may include the cost of employee
fringe benefits, such as group life insurance, group hospitalization,
disability benefits, medical care and pensions in determining the general
prevailing rate or per diem wages?

Article 5159a, Section 2, V. T. C. S., provides:

> The public body awarding any contract for public
> work on behalf of the State, or on behalf of any county,
> city and county, city, town, district or other political
> sub-division thereof, or otherwise undertaking any
> public work, shall ascertain the general prevailing
> rate of per diem wages in the locality in which the
> work is to be performed for each craft or type of work-
> man or mechanic needed to execute the contract and
> shall specify in the call for bids for said contract,
> and in the contract itself, what the general prevailing
> rate of per diem wages in the said locality is for
> each craft or type of workman needed to execute

p. 1628

the contract, also the prevailing rate for legal
holiday and overtime work, and it shall be manda-
tory upon the contractor to whom the contract is
awarded, and upon any subcontractor under him,
to pay no less than the said specified rates to all
laborers, workmen, and mechanics employed by
them in the execution of the contract.

Section 4 defines three terms, one of which is "general prevailing
rate of per diem wages."

The term 'general prevailing rate of per diem
wages' shall be the rate determined upon as such
rate by the public body awarding the contract, or
authorizing the work, whose decision in the matter
shall be final . . . . Nothing in this Act, however,
shall be construed to prohibit the payment to any
laborer, workman or mechanic employed on any
public work as aforesaid or more than the said
general prevailing rate or wages.

The Supreme Court of Texas has held that the decision of a public
body fixing the prevailing wage rate for a locality is final and may not be
reviewed judicially. Texas Highway Commission v. El Paso Building &
Construction Trades Council, 234 S. W. 2d 857 (Tex. 1950).

The primary purposes of the statute are:

. . . [T]o inform the bidder the wage rate to be paid
his employees and especially to protect workmen,
laborers and mechanics from being required, if they
accept employment to work for less than the pre-
vailing wages paid in the county for the same class
and character of work. Texas Highway Commission
v. El Paso Building and Construction Trades Council,
supra, at p. 861.

p. 1629

In 1933, when Article 5159a was enacted, fringe benefits were essentially unknown.  That fact alone does not, in our opinion, foreclose the discretionary right of a public body to determine that "fringe benefits" have become an important factor in determining the prevailing wage.  As found by the United States Senate, "Fringe benefits such as group life insurance, group hospitalization, disability benefits, medical care, and pensions, were not important wage factors until World War II . . . [since then] welfare and pension plans have experienced a phenomenal growth, " and in 1964 almost 110 million persons were relying on benefits from such plans.  Senate Report No. 963, 2 U.S. Code Cong. and Adm. News, (88th Cong. 2d sess.) p. 2339 (1964) at p. 2341.  The same Senate Report found that in many areas of the country the great majority of contractors compensate their employees in two forms; cash, and fringe benefits and that the "fringe benefits clearly constitute a form of wages. "

Therefore, the Congress specifically provided in the Davis-Bacon Act that the Secretary of Labor in making prevailing wage determinations shall include, "The rate of contribution" to employee welfare and pension plans.  40 U.S.C.A. Sec. 276a.  An amendment to the Davis-Bacon Act was necessary in order to accomplish inclusion of such fringe benefits because of the Act's requirement that wages be paid "unconditionally. " See Senate Report 963, supra, at pp. 2341-2342.  The Texas Statute does not require that "wages" be paid "unconditionally, " and hence a statutory amendment is not, in our opinion, essential to the establishment of the discretionary right of a public body to determine that fringe benefits can be considered as properly includable within the term "wages" in Article 5159a.

Therefore, a public body may properly consider "fringe benefits" in determining a prevailing wage rate for a particular locale.

The statutory definition of "prevailing wage rate" certainly does not per se impose restraint on the judgment of the public body in this matter.

Indeed there are many examples of the term "wages" being construed to include employer contributions to group employee pension and welfare plans. Thus, in Inland Steel v. N. L. R. B., 170 F. 2d 247 (7th Cir. 1948), aff'd., 339 U. S. 382 (1950), the Court held that contributions to retirement and pension plans were included within the term "wages" within the meaning of Sec. 9 of the National Labor Relations Act. 29 U. S. C. A., Sec. 159. In a similar fashion, Article 8309, V. T. C. S., a part of the Texas workmen's compensation laws, defines "average weekly wages" to include an "advantage which can be estimated in money which the employee receives from the employer as a part of his remuneration."

An early Texas case, Byrd v. City of Dallas, 6 S. W. 2d 738 (Tex. 1928) held:

> The right to participate in such a fund [pension]
> is therefore not a gratuity or donation in any sense.
> It is as much a part of the agreed compensation as
> is the monthly stipend. (6 S. W. 2d at 741).

Two fairly recent California Supreme Court decisions, Dunlap v. Tremayne, 398 P. 2d 774 (Cal. 1965) and Tracy v. Contractor's State License Board, 407 P. 2d 865 (Cal. 1965) reach a similar conclusion.

See also, People v. Vetri, 131 N. E. 2d 568 (N. Y. 1955); Educational Fund of Electrical Industry v. U. S., 305 F. Supp. 317 (S. D. N. Y. 1969); United Brick & Clay Workers of America, AFL-CIO v. International Union of Dist. 50 UMW of A, 439 F. 2d 311 (8th Cir. 1971).

## SUMMARY

Article 5159a, V. T. C. S., gives the public body
involved in letting a contract for public works the
responsibility for determining the "prevailing wage
rate" in its locale for a particular class and character

of work.   In its discretion the wage set may
include the value of "fringe benefits"' available
to employees of the area engaged in similar
kinds of labor.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

lg